```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KATHLEEN A. SCRIVNER            :        CIVIL ACTION
                                :
         v.                     :
                                :
ACE USA and ALFRED E.           :
BERGBAUER                       :        NO. 07-1329
```

MEMORANDUM AND ORDER

McLaughlin, J.                                    November 19, 2007

   This is an action for gender discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 et seq.  The suit arises from events that allegedly occurred while the plaintiff, Kathleen A. Scrivner, was employed by the corporate defendant, ACE USA ("ACE"), and supervised by the individual defendant, Alfred E. Bergbauer.  The defendants have moved to dismiss the case and compel arbitration, based on an arbitration clause contained in ACE's Employee Guide (the "Guide").  The plaintiff responds that she never agreed to be bound by the Guide.[1]  For the reasons set forth below, the Court will grant the motion.

   The plaintiff worked for CIGNA for several years, and when ACE acquired the division of CIGNA that employed the

---

[1] The plaintiff does not raise any other theories for finding that no agreement to arbitrate was validly formed.

plaintiff, the plaintiff became an ACE employee.  Soon after ACE took over, it distributed via e-mail the "ACE Employee Guide: Receipt and Agreement" ("R&A") that all employees were to sign.  The employees were told that they must sign the R&A if they wanted to continue to work for ACE.  The plaintiff signed such an R&A on June 1, 2000.  The R&A states, "[t]his is to acknowledge that I have received and will take the time to review the ACE Employee Guide available to me on ACE's intranet site.  I agree that it is my responsibility to read the Employee Guide and to understand and abide by the rules, policies, procedures and standards set forth in the Guide."  The Guide sets forth a mandatory arbitration policy that would encompass all of the plaintiff's claims in the instant suit.  The plaintiff states that she never received the Guide and was not fluent in the use of ACE's intranet at the time she signed the R&A.  She argues that, therefore, she and the defendants have no contract to arbitrate because she never accepted the contract.

"[T]he threshold questions a district court must answer before compelling or enjoining arbitration are these: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?"  John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998).  The parties agree that the second question must be

answered in the affirmative.  The Court, therefore, must consider whether the parties entered into a valid arbitration agreement.

The Court must treat a motion to compel arbitration as a motion for summary judgment.  Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 & n.9 (3d Cir. 1980).  If it finds that the suit includes arbitrable claims, the Court must at least stay the litigation.  Federal Arbitration Act (FAA), 9 U.S.C. § 3 (2000).  If all the claims in a suit are subject to arbitration, the Court may dismiss the suit.  Seus v. John Nuveen & Co., 146 F.3d 175, 179 (3d Cir. 1998), overruled on other grounds by Green Tree Financial Corp.- Alabama v. Randolph, 531 U.S. 79 (2000).  "[S]tatutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (compelling arbitration of an ADEA claim); see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 113-14 (2001) (holding that employment contracts are subject to the FAA).[2]

Although federal law governs the interpretation of the scope of an arbitration agreement, state common law governs the

---

[2] The United States Court of Appeals for the Ninth Circuit has held that agreements to arbitrate Title VII claims must be "knowing," applying a higher standard than to ordinary arbitration agreements.  Prudential Ins. Co. of Am. v. Lai, 42 F.3d 1299, 1304-05 (9th Cir. 1994).  However, the United States Court of Appeals for the Third Circuit has rejected that approach as inconsistent with Gilmer.  Seus v. John Nuveen & Co., 146 F.3d 175, 183-84 & n.2 (3d Cir. 1998).

question of whether a contract was formed at all.  John Hancock, 151 F.3d at 137.  In the instant case, the defendant argues, and the plaintiff does not dispute, that Delaware law governs.[3]  The Court will turn to the standard under Delaware law for determining whether the parties formed a contract:

> Under Delaware law, the criteria for deciding whether a contract exists is the intention of the parties, evidenced by their objective conduct and manifestations.  The parties' subjective intent is irrelevant.  Rather, the court's inquiry is whether a reasonable man would, based upon the objective manifestation of assent and all of the surrounding circumstances, conclude that the parties intended to be bound by contract.

Wilcher v. City of Wilmington, 139 F.3d 366, 372-73 (3d Cir. 1998) (citing Indus. Am., Inc. v. Fulton Indus., Inc., 285 A.2d 412, 415 (Del. 1971); and Leeds v. First Allied Conn. Corp., 521 A.2d 1095, 1101 (Del. Ch. 1986)) (internal quotations omitted).

In the present case, the plaintiff, who held a management position within ACE, signed a document stating, "I agree that it is my responsibility to read the Employee Guide and to understand and abide by the rules, policies, procedures and standards set forth in the Guide."  From an objective standpoint,

---

[3] The Court must apply the choice of law principles of the forum state, Pennsylvania.  "Pennsylvania courts apply the law of the place where a contract is made and where it is to be performed."  Craftmark Homes, Inc. v. Nanticoke Constr. Co., 526 F.2d 790, 792 (3d Cir. 1975) (citing In Re Estate of Danz, 283 A.2d 282 (Pa. 1971)).  Here, the plaintiff was employed in Delaware, so that is where the contract was made and was to be performed.

this signature indicates her intent to be bound by the policies noted in the Guide.  Furthermore, ACE's insistence that all employees sign the R&A should have put the plaintiff on notice that she was agreeing to substantive policies.  The plaintiff's argument that she did not know the contents of, and was never given, the Guide is unavailing.[4]

Under Delaware law, failure to read a contract is no defense to its enforcement.  Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908 (Del. 1989).  Nor is a failure to be presented with the contract at the time of acceptance.  In Graham, the court compelled the plaintiff insureds to arbitrate with the defendant insurance company even though they did not receive the policy containing the arbitration clause until after they paid their first premium, and the defendant never informed the plaintiffs of the arbitration clause.  Id. at 912.  The plaintiffs eventually received the policy and continued to pay premiums for some time before the incidents that gave rise to the lawsuit.  Graham notes that "[a] party to a contract cannot

---

[4] The defendants proffer the affidavit of its current Vice President for Human Resources, Denise Carson.  Ms. Carson's affidavit states that in order to reach the page of the R&A that the employee had to sign, the employee would have to click on the Introduction page, which "contains both a general description of the arbitration policy and a link to the policy language itself." However, because the Court finds that the plaintiff was on notice that by signing she was agreeing to the contents of the Guide, the Court need not reach the question of whether Ms. Carson's and Ms. Scrivner's versions of the facts conflict so as to produce a contested issue of material fact.

silently accept its benefits and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance." Id. at 913.

Likewise, Ms. Scrivner's choice to sign the R&A and remain employed at ACE indicates her acceptance of the terms of the Guide, even if she had not read the Guide. The parties dispute how easily the plaintiff could have gained access to the Guide, but the plaintiff does not argue that the Guide was withheld or hidden from her. At least one other jurisdiction has held that when a sophisticated party, including a higher-level employee, signs a document that incorporates another document, she assents to the content of that other document. Butvin v. Doubleclick, Inc., No. 99 CIV 4727 JFK, 2001 WL 228121, at *5 (S.D.N.Y. Mar. 7, 2001) (applying New York law).

The various district court cases that the parties have cited do not change the conclusion that the plaintiff sufficiently manifested consent to the arbitration clause. As the plaintiff rightly points out, in several of the cases the defendants cite, the plaintiffs whom the court compelled to arbitration had been given physical copies of the document containing the arbitration clause. E.g., Gutman v. Baldwin Corp., No. Civ. A. 02-7971, 2002 WL 32107938 (E.D. Pa. Nov. 22, 2002); Venuto v. Ins. Co. of N. Am., No. Civ. A. 98-96, 1998 WL 414723 (E.D. Pa. July 22, 1998). At least one case, however,

compelled arbitration under facts that appear similar to the facts here.  Brennan v. ACE INA Holdings, Inc., Civ. No. 00-2730, 2001 U.S. Dist. LEXIS 9453 (E.D. Pa. June 13, 2001).  Brennan enforced an arbitration clause where the plaintiffs had all signed an R&A.  The court emphasized the plaintiffs' signature as the dispositive factor but did not explicitly address what, if any, notice or written policy the plaintiffs had received before they signed the R&A.  Id. at *3-*5.

The case on which the plaintiff relies is not squarely on point.  In Pratta v. American General Financial Services, No. Civ. A. 04-089-JJF, 2004 WL 2537081 (D. Del. Nov. 5, 2004), the court refused to enforce an arbitration clause between an employer and an employee.  The Pratta defendant argued that it had sent its arbitration policy to all employees, made the policy available on the intranet, and posted a sign about the policy in the branch office that the plaintiff managed.  The plaintiff, however, argued that she had no knowledge of the arbitration policy and therefore had not accepted that policy by continuing to be employed by the defendant.  Id. at *1.  The court found that the defendant "has not sufficiently demonstrated that [the plaintiff] was actually in receipt of any of the [arbitration] documents" and therefore she could not have intended to be bound. Id. at *2.  The Pratta plaintiff, unlike Ms. Scrivner, had not signed any document attesting to being on notice that the company

had an employment guide with which the plaintiff had the responsibility to comply.

Because it finds that the plaintiff's signature on the R&A is enough to bind her to the arbitration clause, the Court does not reach the defendants' other arguments.

An appropriate Order follows.

```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KATHLEEN A. SCRIVNER          :      CIVIL ACTION
                              :
     v.                       :
                              :
ACE USA and ALFRED E.         :
BERGBAUER                     :      NO. 07-1329
```

ORDER

AND NOW, this 19th day of November, 2007, upon consideration of the defendants' Motion to Dismiss and to Compel Arbitration (Docket No. 7), and of the plaintiff's opposition thereto, and of the defendants' reply thereto, IT IS HEREBY ORDERED that the motion is GRANTED.  The claims of plaintiff Kathleen A. Scrivner are hereby DISMISSED, and arbitration of those claims is COMPELLED.


                              BY THE COURT:


                              /s/ Mary A. McLaughlin
                              MARY A. McLAUGHLIN, J.